(128 App. Div. 81.)

HARRISON v. ARGYLE CO.

(Supreme Court, Appellate Division, Second Department.   October 9, 1908.)

1. APPEAL AND ERROR—REVIEW—VERDICT—CONCLUSIVENESS.
   A verdict on conflicting evidence is conclusive on appeal.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 3935–3937.]

2. SALES—PERFORMANCE OF CONTRACT—OFFER BY SELLER—SUFFICIENCY—GOOD FAITH.
   In an action for breach of contract to deliver goods, the defense being a rescission of the contract for an alleged failure by plaintiff to make the payments agreed on, that defendant offered to deliver the goods if plaintiff would pay cash for them did not limit recovery to nominal damages, where the offer was not made in good faith and defendant was in fact unable to furnish the goods as agreed.

3. SAME—REMEDY OF BUYER—ACTIONS FOR BREACH—EVIDENCE—SUFFICIENCY—OFFER TO DELIVER.
   In an action for failure to deliver goods as agreed, the evidence held to sustain a finding that defendant's offer to deliver was not made in good faith, but to avoid his obligations under the contract.

4. APPEAL AND ERROR—EXCEPTIONS—INSTRUCTIONS—FAILURE TO EXCEPT—EFFECT.
   Where the court instructed, without objection or exception, as to plaintiff's measure of damages for breach of contract, it cannot be objected to on appeal.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, §§ 1309–1314.]

5. SALES — REMEDY OF BUYER — ACTIONS FOR BREACH OF CONTRACT—DUTY TO PURCHASE ELSEWHERE.
   Where the buyer did not concede the seller's rescission in May of a contract for delivery of goods in September, he was not bound to purchase elsewhere before that time in order to reduce the loss from the seller's breach, even if he knew that the latter had repudiated the contract, especially where the market price was falling during the summer and the goods could not be bought on the open market, but had to be contracted for in advance.

6. SAME — PLEADING — DAMAGES—ALLEGATIONS OF GENERAL DAMAGE—SUFFICIENCY.
   The complaint alleged, as to each of the three contracts sued on, that plaintiff contracted for the delivery of goods for the purpose of resale, which defendant knew, and that the goods were under contract for resale when the order was given, but no amount of special damages was alleged; but in a separate paragraph in each case it was alleged that by reason of such facts the plaintiff had been damaged in the sum of $500, and $5,000 was claimed as damages for all three causes of action.  The order for a bill of particulars provided that on plaintiff's failure to file a bill of particulars he was not precluded from showing general damages if the court decided the complaint alleged such damages, and there was no effort to establish special damages; the trial proceeding on the theory that only general damages were in issue.  Held, under the liberal rule of pleading, that the complaint sufficiently alleged general damages.

Appeal from Trial Term, Kings County.

Action by Mildred L. Harrison, doing business as the Harrison Commission Company, against the Argyle Company.  From a judgment for plaintiff, and the refusal of a new trial, and the grant of an extra allowance, defendant appeals.  Affirmed.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and RICH, JJ.

Louis Salant, for appellant.

Julius Henry Cohen (Theodore B. Richter, on the brief), for respondent.

WOODWARD, J.   This action was brought to recover damages for a breach of contract on the part of the defendant in failing and refusing to complete the delivery of certain goods, which it had undertaken to manufacture and deliver to the plaintiff at prices agreed upon and upon terms of credit and payment mutually satisfactory.  There is no question about the making of the contract, or of the quality and quantity of goods to be manufactured and delivered; nor is there any question about the prices, nor yet of the terms which were originally agreed upon, except that, while it is admitted that originally the plaintiff was to have a credit limited to $500, it is claimed that this credit was subsequently extended to $1,000.  The contract price of the goods involved in the transaction was $8,043.12, and by the terms of the agreement between the parties these goods were to be delivered from time to time, the plaintiff's credit limited as above suggested, and payments to be made at the end of 30 days from the delivery of each installment.  There were three separate contracts, all similar to the above, but bearing different dates; but it is admitted that no goods were delivered under any of these contracts, excepting the one of July 5, 1905.  During business under the contract of July 5th the plaintiff was urging the defendant for deliveries of the goods during the early part of the year 1906, and in April of that year there was a claim advanced on the part of the defendant that the plaintiff was slow in making payments and that his time overran some days; and this controversy, the plaintiff demanding goods and the defendant complaining of lack of promptness in payments, ran along until early in May, when the defendant refused to deliver any more goods to the plaintiff, except on condition that the plaintiff, who had been accorded a 30-day credit, should pay cash on delivery, less one-half of 1 per cent. for the use of the money.  The plaintiff refused to permit a modification of the terms of the contract, whereupon the defendant peremptorily refused to recognize the contract as binding upon it, and the plaintiff brought this action to recover damages for the breach of the contract.  The jury has awarded a verdict, upon which a judgment for $1,541.23 has been entered, and from this judgment, and an order denying a motion for a new trial, as well as from an order granting an extra allowance, the defendant appeals.

There was a distinct conflict of evidence upon all of the questions at issue, and the verdict of the jury must be conclusive upon this appeal, unless there is error of law.   It is urged under the defendant's first point that, as the defendant offered to furnish the plaintiff with these goods if the plaintiff would pay cash for the same, the latter is entitled only to nominal damages, because he could have prevented the damages by purchasing from the defendant on a cash basis.  It might be that if the defendant, acting in good faith and being govern-

ed by prudence, had refused credit to the plaintiff, and had been prepared to deliver the goods upon the payment of cash, and had offered to do so, the rule invoked might have force. But the evidence was such that the jury were entirely justified in finding that the complaint of the defendant about payments was lacking in good faith, and that the real trouble lay in the fact that the defendant was not prepared to deliver the goods as called for by the plaintiff's contract. The mere refusal of the defendant to deliver goods unless payment in cash was made was not an offer in good faith to fulfill the contract upon the payment of cash, and if the defendant was in fact unable to fill the order it could gain no rights as against the plaintiff by suggesting that it would do what it could not do. We think the evidence warranted the jury in holding that the offer was not made in good faith, and under the circumstances the plaintiff was not under obligations to offer cash for the delivery of the goods. So far as the evidence goes, the plaintiff appears to have given checks on the days when the payments became due; at least they were dated on those days, and the jury was not bound to believe that they were delivered some days subsequent, even though defendant's witnesses testified to that effect. There appears to have been no question that the plaintiff was able to make the payments when due. No suggestion of insolvency is made, and the jury had a right to conclude that this complaint of tardiness in payments was but an afterthought, to avoid the obligations of the contract.

The defendant also urges, with great elaboration of detail and supported by many authorities, that the plaintiff, when he knew that the contract had been repudiated by the defendant, owed the active duty of making the loss as small as possible, and that he had no right to wait from the early part of May to August and September, when the deliveries were due, and then measure his damages by what it would cost to purchase the goods in the open market; it appearing from the evidence that it was at that time necessary to purchase of jobbers, rather than of manufacturers, at greatly enhanced prices. A very complete answer to this proposition is the fact that the court charged the jury upon this question precisely in line with the evidence, and that the defendant made no objection and took no exception to the rule as stated. Upon the basis of that ancient maxim of the common law, that "that to which a person assents is not esteemed in law an injury" (Broom's Legal Maxims), the defendant is in no position to raise this question upon appeal. The court charged:

"Now that is all there is about the case, gentlemen. If the plaintiff is entitled to recover, the measure of damages—that is, the amount he is entitled to recover—is the difference between the contract price and what the goods were worth in the market; not what they cost him, but what he could go into the market and buy them for at the time they should have been delivered. Whether you have carried in your minds figures enough to be able to dispose of that question or not I very gravely doubt; but that is the legal measure of damages, namely, the difference between the contract price and the market price at the time when they should have been delivered. In speaking of the market price, I refer to the market to which the plaintiff was compelled to resort. If they could be purchased currently at the manufacturer's, it would be the manufacturer's price that would be in question; but if they could not be purchased there, if there was no market in that quarter, then the market to

which the plaintiff was compelled to resort would, of course, furnish the measure of his actual loss."

This charge, unchallenged, must stand as the law of the case, and the evidence fully justified the determination of the jury. It might be, of course, if the market for this kind of goods was obviously advancing at a ·rapid rate, it would be the duty of the plaintiff to make an effort to procure the goods at a rate to protect the defendant, so far as possible; but no such situation was shown. Indeed, the evidence tended to show that the market was quite steady, with a tendency downward in the summer months; the difficulty being that the goods (underwear) had to be contracted for some time in advance, and at the time of delivery there were no goods of the plaintiff's class in the hands of manufacturers ready for delivery. Obviously it was not the duty of the plaintiff, who refused to regard the contract as a nullity, to take the chances of ordering goods in May to be delivered in August and September; for he could not know what the market would be, and there is nothing to show that he could have placed his orders at that time and been able to meet the terms which might have been imposed. Moreover, having refused to treat the contract as being abrogated, the defendant might have elected to fill the orders.

It is insisted, however, that the plaintiff alleged in her complaint special damages, and that the court erred in permitting proof of general damages. The complaint did allege, as to each of the contracts sued upon, that the goods were ordered for the purpose of resale, that this fact was known to the defendant, and that the goods were already under contract at the time the orders were given; but, while there was an allegation of damages, no amount was stated. In a separate paragraph it was, in each ·case, averred that "by reason of the aforesaid facts the plaintiff has been damaged in the sum of $500," or whatever sum was claimed upon the cause of action, and the demand for judgment was for $5,000, the aggregate of the three causes of action alleged. We are of the opinion that, in view of the resettled order for a bill of particulars, in which it was provided "that, in the event of plaintiff's failure to serve a verified bill of particulars as aforesaid, she shall not be thereby precluded from giving evidence of her general contract damages upon the trial of this action, if the trial court should decide that the complaint alleges such damage," it would serve no end of justice to hold that the plaintiff was not entitled to show her damages. There was no effort to establish the special damages, the trial proceeded upon the theory that the general damages were to be litigated, and we believe that under the liberal rule of pleading the complaint did allege the general damages.

An examination of the exceptions urged does not disclose to us reasons warranting a reversal of this judgment.

The judgment and orders appealed from should be affirmed.

Judgment and orders affirmed, with costs. All concur, except RICH, J., who votes to modify the judgment by striking out the provision for an extra allowance, and, as thus modified, to affirm.